*344
Curia,per

Evans, J.
We are all*well satisfied with the' decision of the circuit judge on the first ground. No amendment should be allowed which will operate as a surprise or delay to the adverse party. To have suffered the appellants to strike out one of themselves from the record, in order to have him examined as a witness, would have operated in this case as a surprise on the appellee. He could not have been prepared to reply to testimony which he could not anticipate, and which was incompetent when the trial commenced.
The second ground presents the proposition, whether, if the jury believed, from the evidence, that the will was written by Veale, according to the directions of the testator, that was sufficient, and it was immaterial whether the testator read the will or heard it read. If the instruction was erroneous, then a new trial should be granted for misdirection on a point of law. We are, then, to enquire whether it was essential to the validity of Boyd’s will that he should have read it himself, or heard it read. Every legal proposition laid down by a judge in his charge to the jury, must be understood as made in reference to the facts of the case. What then were the facts 1 The deceased desired to die testate ; he sent for Veale to write his will; he was an aged man, but of sound mind, although at the time suffering much bodily pain. Veale says, the testator dictated the will, clause by clause, and he wrote down each clause according to the testator’s direction. The will was then signed and attested, and kept by Veale, by the request of Boyd, until after his death, which occurred ten months afterwards. There was no proof that the will was read to the testator; and for the purpose of this decision, it must be assumed that he did not read it himself; the judge having charged the jury that that was immaterial. The jury, under this charge, found for the will, and thereby have established the fact that the will was written by Veale conformably to the testator’s instructions. Is this sufficient in law to establish the will, or is it necessary to its validity, that after it was written, it should have been read over to the testator, or that he should have read it himself? To answer this, let us enquire what is a will % It is a declaration of intention in relation to a man’s estate, to take effect after his death, executed with legal solemnities. All the forms required by the statute law as to the mode of execution, have been complied with in this case ; and if the paper propounded to the ordinary be a true declaration of Boyd’s intentions, then it should be admitted to probate. In general, the solemn execution in the presence of witnesses, has been regarded as satisfactory evidence that the paper propounded as a will, was in conformity with the intentions and wishes of the testator. If, in addition, it be proved that he wrote it himself, or if after it was written by another, it *345 wás read over and assented to, then we cannot doubt about.it. But suppose, after the instructions were reduced to-writing, the testator should sign without reading or hearing it read, and it were proved by a dozen undoubted witnesses, that the scribe wrote down the instructions exactly as the testator delivered them; is nqt this evidence entirely satisfactory to the mind, that the paper propounded is a true declaration of the testator’s wishes and intentions ? Judging from the analogy of other cases,’ and the reasonableness of the proposition, I should think such evidence* would be sufficient to establish the will, unless there be some rule of law which requires that the will should be read to or by the testator. Let us look into the authorities, arid' see if there be any such rule. In Sikes vs. Snarth, 2 Phill. 350, Snarth, the testator, sent for his solicitor, Walton,into his bed room, and gave him detailed instructions for making his will; Walton retired into another room, and immediately committed to writing the heads dr substance of the instructions, and then proceeded to draw üp a will from them. The testator was taken suddenly very ill, and died without having seen the will, and without having heard it read, or the instructions, after they were reduced to writing. The will was allowed.Sir John Nichol, in delivering his judgment, says, “ on the point of law,whether a paper can be pronounced for, which had never been seen by the deceased, or read over to him, I have no doubt.” “ This" principle' was recognized in Wood vs. Wood. It has been argued that these are here mere heads of instruction, committed to writing, and that neither will nor instructions have been read over to the deceased. I do not apprehend the law requires one or the other.” “ The doctrine of the court was fully laid down in Bury vs. Bury, where instructions were established, on satisfactory proof that they had been reduced to Writing,in the lifetime' Of the testator. In Box vs. Wetherby, the court said, reading over was only required to show that the paper was conformable to instructions.’*
In a subsequent part of the same case, the same learned judge says, “ I find a series of decisions from Gardner vs. Smith, in 1727, in which thé principle has been established that a paper not written in the presence of, nor read over to, or by, the testator, may yet be established, upon clear proof that it was written in his lifetime, and was drawn up conformable to his instructions.” There is nothing in Billinghurst vs. Vickers, 1 Phill. 172, opposed to this principle. In that case, the first part of the will was written by the testator himself. This was allowed. But there were tvvo clauses appended by Billinghurst. These added clauses appointed him executor, and gave him a legacy of £500, and a legacy of £400 to another. They two were the only persons present, and there was no proof of instructions or reading over, except the assertion of Billinghurst, who was *346 clearly incompetent. These clauses were rejected, there being á total absence of proof that the testator intended so to dispose of his property. The same remarks apply to our own case of Tomkins vs. Tomkins. There was no proof of either reading over or instructions ; but I apprehend, if Tomkins, who wrote the will in that case, had testified as Veale did in this case, the result would have been very different.. The rule laid down in that case is, that if the capacity be doubtful, there must be proof of instructions or reading over. The whole current of decisions is to the same effect. In Black vs. Ellis, decided in Charleston, May, 1836, the same doctrine is to be found, and I have found no case in which it has been held, or even intimated, that where there was clear proof of instructions, reading over was necessary. They are both evidence of the fact, that the paper propounded is the true will or declaration of the testator’s intention; but either of them will suffice, if fully and clearly made out.
The motion is refused.
Gantt, Richardson, Earle, and Butler, JJ. concurred.